IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AUDIOLOGY DISTRIBUTION, LLC
d/b/a HEARUSA,

    Plaintiff,

v.                                                Civil Action No. 5:13CV154
                                                               (STAMP)
JILL K. HAWKINS, individually
and d/b/a HAWKINS HEARING, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**CONFIRMING THE PRONOUNCED ORDER OF THE COURT**
**DENYING WITHOUT PREJUDICE PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

I.    Procedural History

On November 6, 2013, the plaintiff in the above-styled civil action filed a complaint against the defendant alleging claims for breach of contract, breach of the duty of loyalty, and tortious interference with prospective contractual relations resulting from the defendant's alleged violation of a covenant not to compete ("the covenant"). Thereafter, the plaintiff filed a motion for a temporary restraining order and preliminary injunction and a motion to expedite discovery, to which the defendant responded in opposition and the plaintiff replied. This Court then held a hearing on the motion for temporary restraining order on November 12, 2013. At the hearing, this Court granted the plaintiff's motion for temporary restraining order, finding at that time that the plaintiff had satisfied the requirements for such order. This

Court entered an order confirming the pronounced order and confirming the date for the hearing regarding a preliminary injunction. On December 10, 2013, this Court held the hearing on the preliminary injunction. At this hearing, the Court denied the plaintiff's motion for a preliminary injunction without prejudice to refiling upon the completion of further discovery as to the irreparable harm requirement. This order confirms the pronounced order of the Court in more detail for the reasons set forth below.

## II. Facts[1]

Defendant, Jill K. Hawkins, is a licensed audiologist in West Virginia. She has her masters and doctorate degrees in audiology. After the company she worked for from 2000 to 2004 closed, she and a colleague opened TriState Audiology in Weirton, West Virginia. Initially, the defendant was a 49% shareholder of TriState Audiology. In October 2007, the defendant no longer owned any portion of TriState Audiology but stayed with the company as an employee and sole audiologist.[2] At some point in late 2011 or early 2012, the defendant learned that TriState Audiology may be sold. In Spring 2012, the defendant met with Richard Whitman

---

[1] For purposes of deciding this motion for a preliminary injunction, this Court, for the most part, adopts the facts as set forth in the plaintiff's complaint and as developed by testimony at the hearing on the motion for a preliminary injunction.

[2] The defendant indicated during her testimony that TriState Audiology also employed "a couple doctoral residents two years in a row" but that she was the main audiologist.

("Whitman"), HearUSA's Vice President of Business Development, where she learned that HearUSA was considering purchasing TriState Audiology. HearUSA did acquire TriState Audiology on or about September 27, 2012.

Prior to the acquisition, the defendant met with Whitman at HearUSA's corporate offices in Florida to discuss potential employment with HearUSA upon its purchase of TriState Audiology. At this meeting, the defendant and Whitman discussed the terms of her potential employment, which included a discussion of the covenant not to compete. Whitman explained to the defendant that signing the covenant not to compete was a requirement of employment with HearUSA. The covenant states in pertinent part:

> For and in consideration of employment with the Company Employee hereby covenants and agrees that for a period of twelve months following the termination of employment for Audiology Distribution,[3] Employee shall not, directly or indirectly, compete with Audiology Distribution within a 10 mile radius wherein Employee performed services under its employment with the Company for or on behalf of Audiology Distribution, and that this non-compete covenant specifically includes, but is not limited to, contacting the customers, clients and prospective customers and clients of Audiology Distribution. Employee acknowledges that the restrictions and obligations set forth and imposed herein will not prevent Employee from obtaining gainful employment in Employee's field of expertise or cause Employee undue hardship, and that the restrictions imposed herein are reasonable and necessary to protect the legitimate business interests of Audiology Distribution. Employee further acknowledges that it is impossible to measure the monetary damages to Audiology Distribution by reason of breach of any of the

---

[3]This Court notes that Audiology Distribution, LLC does business under the name HearUSA.

3

> provisions contained herein, and that in the event of a breach by Employee, Audiology Distribution shall be entitled to equitable relief, including the right to enjoin any party in violation of this agreement. Employee further understands and agrees that if a court shall hold any part of this covenant not to compete as unenforceable due to its general scope, duration or geographic restriction, then in such event Employee agrees that the scope, duration or geographic restriction shall be amended to the greatest scope, longest period of time and the largest geographical area enforceable under the applicable law of the state.

ECF No. 38 Ex. 3. The defendant's employment with HearUSA started on Friday, September 28, 2012. She signed her employment offer and the covenant the following Monday, October 1, 2012. Her employment offer contained her salary, a bonus provision, and a commission provision for the products she sold to her patients.

In Summer 2013, the defendant started to look into opening her own audiology business. On August 15, 2013, the defendant obtained a certificate of limited liability company for "Hawkins Hearing." On September 6, 2013, on behalf of Hawkins Hearing, the defendant obtained a business loan. Then on September 10, 2013, the defendant, again on behalf of Hawkins Hearing, obtained a business property lease for a property that was less than three miles from HearUSA's Weirton, West Virginia location. A little over two weeks later, on September 27, 2013, the defendant faxed her resignation letter to her direct supervisor at HearUSA, and her last day of employment with HearUSA was October 11, 2013. Prior to leaving HearUSA, the defendant told some of her patients that she was planning to leave and possibly open her own business. After

4

leaving, the defendant asserts that she received approximately 25 phone calls at her home from patients asking where she was, to which she responded she was opening her own business. The defendant started seeing patients at her new location on November 7, 2013. From November 7, 2013 through November 19, 2013, when the temporary restraining order became effective, the defendant had 25 appointments scheduled with 21 different patients. Twenty of these patients were prior patients of HearUSA.

### III. Applicable Law

The United States Court of Appeals for the Fourth Circuit has recognized that "preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1992)) (internal quotations omitted).

Until 2008, the Fourth Circuit followed the four-factor Blackwelder test in determining whether a preliminary injunction should be granted. See Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977). These factors were: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the

public interest." Id. at 193. In light of the Supreme Court's ruling in Winter v. Natural Resources Defense Council, Inc., 55 U.S. 7 (2008), however, the Fourth Circuit has abandoned this Blackwelder test in favor of the stricter approach in Winter.

In The Real Truth About Obama, Inc., the Fourth Circuit set forth the equitable factors that a district court must consider when determining whether a temporary restraining order or preliminary injunction should issue based on the Supreme Court's ruling in Winter. The four factors that the plaintiff must establish to obtain a preliminary injunction under this test are:

> (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

Id. at 346 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008)). As to the first two factors, Winter requires that the plaintiff clearly demonstrate that he will likely succeed on the merits and that he will likely be irreparably harmed absent preliminary relief. See The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346-47 (4th Cir. 2009) (emphasis added).

The issuance of a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974). If a preliminary injunction is granted, the order granting the same

must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or any other document -- the act or acts restrained or required." See Fed. R. Civ. P. 65(d).

IV. Discussion

A. Likelihood of Success on the Merits

The defendant asserts that the covenant not to compete is invalid and, even if it is valid, it is unenforceable because the contract was entered into under duress and is a contract of adhesion. Thus, she asserts that the plaintiff is not likely to succeed on the merits. This Court, however, finds that the plaintiff is likely to succeed on the merits based on the current record, as the covenant not to compete seems at this time to be enforceable and the contract, which the covenant is a part of, seems to also be valid.

Before determining whether a covenant not to compete is enforceable, it must first be determined whether the contract in which it is contained is valid. Reddy v. Community Health Foundation of Man, 298 S.E.2d 906, 915 (W. Va. 1982). "[I]f the entire contract fails, for lack of consideration, fraud, duress, adhesion or other contractual excuse, the covenant is also without effect." Id. The defendant contends that the contract lacks consideration, is fraudulent, was made under duress, is a contract of adhesion, and is unconscionable. The defendant, however, at

7

this time, has not provided this Court with sufficient evidence to support such findings. Instead, this Court finds that the requirements of offer, acceptance, and consideration under West Virginia law have been met. As consideration for accepting the offer of employment, the defendant was provided a $65,000.00 salary, a bonus, and a commission provision for the equipment that she sold. While, these provisions are considered similar to those which were contained in her employment agreement with TriState Audiology, such provisions are not exactly the same. Further, this Court does not believe that the acceptance of an offer from HearUSA can be said to be continued employment. A covenant not to compete contained in an offer of continued employment requires additional consideration for the covenant besides that consideration offered in the employment contract. See Environmental Products Co. v. Duncan, 285 S.E.2d 889, 890 (W. Va. 1981) (finding that under West Virginia law, continued employment is not adequate consideration for a new contract). Here, the offer of employment was offered by HearUSA, a different employer than TriState Audiology, and thus, this Court does not find that it was an offer of continued employment.

Furthermore, as stated above, this Court believes that, based on the record at this time, the covenant is an enforceable convent not to compete. According to West Virginia law, after a contract that contains covenants not to compete is deemed valid, the first

step in this Court's analysis of the enforceability of those covenants requires the application of the rule of reason. See Reddy v. Cmty. Health Found. of Man, 298 S.E.2d 906, 915 (W. Va. 1982). As the Reddy court stated, "the very enforceability of the covenant will stand or fall by the rule of reason." Id. at 911. Application of the rule of reason involves three inquiries that require this Court to look to the interests of the employer, the interests of the employee, and the interests of society at large. Id. at 911. Specifically, a covenant is reasonable only if it: (1) is no greater than is required for the protection of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. Id. (citations omitted).

This Court must determine whether the covenant is reasonable on its face "if judicial scrutiny of it is to continue." Id. at 915. If this Court determines it is unreasonable on its face, the covenant is deemed "void and unenforceable." Id. As the court in Reddy stated:

> A covenant is unreasonable on its face when the restriction is excessively broad with respect to time or area, or if in the circumstances the true purpose of the covenant appears to be merely to repress the employee, and prevent him from leaving, rather than to protect the employer's business. Good faith, on the other hand, is evidence of reasonableness.

Id. at 915-916.

If this Court determines that the covenant is reasonable on its face, this Court must then determine whether the employer has

9

shown that it has interests that require protection. Gant v. Hygeia Facilities Found, 384 S.E.2d 842, 845 (W. Va. 1989). To determine whether an employer has interests that need protection, a court must examine "the extent to which the employee may unjustly enrich himself by appropriating an asset of the employer for which the employee has not paid and using it against that very employer." Reddy, 298 S.E.2d at 916. Examples of situations where this may occur "are those where the employer stands to lose his investment in employee training, have his trade secrets or customer lists converted by the employee, or have his market share threatened by the employee's risk-free entry into the employer's market." Id. Protectable interests do not include a former employee's acquired skills and information that "are of a general managerial nature, such as supervisory, merchandising, purchasing and advertising skills and information." Syl., Helms Boys, Inc. v. Brady, 297 S.E.2d 840 (W. Va. 1982). If the employer does have interests that require protection, the restrictive covenant is presumptively enforceable in its entirety. Syl. pt. 3, Reddy.

In applying this law to the circumstances at hand, this Court first notes, that the covenant is reasonable on its face. It is extremely limited in time and geographical scope -- one year within a ten mile radius. Such a restriction does not seem to impose any undue hardship on the defendant, and further there is no indication it is injurious to the public. This covenant does not restrict the

10

defendant's ability to pursue her profession to any great extent, rather it seems to only try to protect the plaintiff's local business. It cannot be said that a ten mile radius, and one year time limit was placed on the defendant to only prevent her from leaving.

As this Court finds that the covenant seems reasonable on its face, the second issue is whether the plaintiff's interests require protection. Based on the evidence presented at the hearing, it is clear that the plaintiff's market share may be threatened by the employee's entry into the defendant's market. The defendant testified that within the short period between November 7, 2013 and November 18, 2013, she saw 21 different patients at her business, 20 of these patients being prior patients with HearUSA. Accordingly, this Court finds that it is likely that the plaintiff will succeed on the merits of its breach of contract claim concerning the covenant not to compete, as such covenant is presumptively enforceable.

B.  Irreparable Harm

As the Fourth Circuit has stated, "[g]enerally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. V. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994) (internal quotations and citations omitted). If, however, "the record indicates that plaintiff's loss is a matter of simple

mathematic calculation, a plaintiff fails to establish irreparable injury for preliminary injunction purposes." Id. at 551-52.

The Fourth Circuit stated in the past that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Id. (emphasis added). Winter, however, "requires that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief." Real Truth About Obama, Inc., 575 F.3d at 347 (emphasis added). Thus, it is no longer adequate to show a mere possibility of irreparable harm. In this instance, the plaintiff has not shown more than a possibility. The plaintiff failed to provide this Court with sufficient evidence of the financial impact that the defendant's actions have caused as to its business, such as a decrease in patient appointments or sales. While the plaintiff has shown that the defendant has seen at least 20 patients at her new location which were prior patients of HearUSA and received approximately 25 calls from prior patients of HearUSA asking about her whereabouts, this Court does not find that such evidence is sufficient to provide a clear showing of irreparable harm.

Further, this Court is also not convinced that such harm is not subject to mathematical calculation. Specifically, the plaintiff has requested in its complaint compensatory damages related to each of its claims, and further in its prayer for relief

states that it is requesting "compensatory damages, including business costs and resulting lost revenue and profits, in an amount to be determined by the evidence presented at trial." ECF No. 1 *11. Accordingly, as it seems that the harm may be mathematically calculated and a clear showing of irreparable harm has not been made, this Court finds that it cannot at this time grant a preliminary injunction.

C. Balance of Equities

When weighing the parties' respective injuries and balancing the equities to determine whether a preliminary injunction should issue, the court should consider: (1) the relative importance of the rights asserted and the act sought to be enjoined; (2) the preservation of the status quo; and (3) the balancing of damage and convenience generally. See Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932). In this instance, the Court has found that the plaintiff "failed to show that [it] will suffer irreparable harm in the absence of a preliminary injunction; therefore, the balance of equities does not favor [the plaintiff]." Z-Man Fishing Products, Inc. v. Renosky, 790 F. Supp. 2d 418, 434 (D.S.C. 2011).

D. Public Interest

In Winter, "the Supreme Court emphasized the public interest requirement, stating, 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences

13

in employing the extraordinary remedy of injunction.'" Real Truth About Obama, 575 F.3d at 347 (quoting Winter, 555 U.S. at 24). As this Court noted in its order granting the plaintiff's request for a temporary restraining order, the public certainly has an interest in enforcing valid contracts and ensuring that defendant does not profit from her own wrongdoing. The public, however, also has an interest in not imposing injunctive relief where there has not been a sufficient showing of the likelihood of irreparable harm. Accordingly, this Court must deny the request for a preliminary injunction at this time. This denial, however, is without prejudice so as to allow the plaintiff, if it decides to do so, to renew the motion upon the completion of further discovery concerning irreparable harm.

## V. Conclusion

For the reasons stated above, the plaintiff's motion for a preliminary injunction (ECF No. 4) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   December 16, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE