```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

AUDIOLOGY DISTRIBUTION, LLC
d/b/a HEARUSA,

    Plaintiff,

v.                                        Civil Action No. 5:13CV154
                                                                                                      (STAMP)
JILL K. HAWKINS, individually
and d/b/a HAWKINS HEARING, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

### I.  Procedural History

      On November 6, 2013, the plaintiff in the above-styled civil action filed a complaint against the defendant alleging claims for breach of contract, breach of the duty of loyalty, and tortious interference with prospective contractual relations resulting from the defendant's alleged violation of a covenant not to compete ("the covenant").  Thereafter, the plaintiff filed a motion for a temporary restraining order and preliminary injunction and a motion to expedite discovery, to which the defendant responded in opposition and the plaintiff replied.  This Court then held a hearing on the motion for temporary restraining order on November 12, 2013.  At the hearing, this Court granted the plaintiff's motion for temporary restraining order, finding at that time that the plaintiff had satisfied the requirements for such order.  This Court entered an order confirming the pronounced order and

confirming the date for the hearing regarding a preliminary injunction.  On December 10, 2013, this Court held the hearing on the motion for a preliminary injunction.  At this hearing, the Court denied the plaintiff's motion for a preliminary injunction without prejudice to refiling upon the completion of further discovery as to the irreparable harm requirement. This Court entered an order confirming this pronounced order.

Prior to the hearing concerning the preliminary injunction, the defendant filed her answer to the plaintiff's complaint.  The defendant also filed a counterclaim against the plaintiff.  This Court believes the counterclaim asserts claims for economic duress, emotional distress, libel, invasion of privacy, a violation of the West Virginia Antitrust Act, and malicious prosecution.  The plaintiff filed a motion to dismiss the counterclaim arguing that the counterclaim lacks sufficient factual predicate to support such claims.  The defendant responded in opposition arguing that she had asserted sufficient facts to support her allegations.  The plaintiff did not file a reply.

This motion is now ripe for disposition.  For the reasons set forth below, this Court grants the plaintiff's motion to dismiss the counterclaim in part and denies the motion in part.  Specifically, this Court grants the plaintiff's motion as to defendant's claims libel, invasion of privacy, violations of the West Virginia Antitrust Act, and malicious prosecution and denies

2

the plaintiff's motion to dismiss defendant's claims for intentional or reckless infliction of emotional distress and economic duress.

## II. Facts[1]

Defendant, Jill K. Hawkins, is a licensed audiologist in West Virginia. She has her masters and doctorate degrees in audiology. After the company she worked for from 2000 to 2004 closed, she and a colleague opened TriState Audiology in Weirton, West Virginia. Initially, the defendant was a 49% shareholder of TriState Audiology. In October 2007, the defendant no longer owned any portion of TriState Audiology but stayed with the company as an employee and sole audiologist.[2] At some point in late 2011 or early 2012, the defendant learned that TriState Audiology may be sold. In Spring 2012, the defendant met with Richard Whitman ("Whitman"), HearUSA's Vice President of Business Development, where she learned that HearUSA was considering purchasing TriState Audiology. HearUSA did acquire TriState Audiology on or about September 27, 2012.

---

[1] For purposes of deciding this motion for a preliminary injunction, this Court, for the most part, adopts the facts as set forth in the plaintiff's complaint and as developed by testimony at the hearing on the motion for a preliminary injunction.

[2] The defendant indicated during her testimony that TriState Audiology also employed "a couple doctoral residents two years in a row" but that she was the main audiologist.

3

Prior to the acquisition, the defendant met with Whitman at HearUSA's corporate offices in Florida to discuss potential employment with HearUSA upon its purchase of TriState Audiology. At this meeting, the defendant and Whitman discussed the terms of her potential employment, which included a discussion of the covenant not to compete. Whitman explained to the defendant that signing the covenant not to compete was a requirement of employment with HearUSA. The covenant states in pertinent part:

> For and in consideration of employment with the Company Employee hereby covenants and agrees that for a period of twelve months following the termination of employment for Audiology Distribution,[3] Employee shall not, directly or indirectly, compete with Audiology Distribution within a 10 mile radius wherein Employee performed services under its employment with the Company for or on behalf of Audiology Distribution, and that this non-compete covenant specifically includes, but is not limited to, contacting the customers, clients and prospective customers and clients of Audiology Distribution. Employee acknowledges that the restrictions and obligations set forth and imposed herein will not prevent Employee from obtaining gainful employment in Employee's field of expertise or cause Employee undue hardship, and that the restrictions imposed herein are reasonable and necessary to protect the legitimate business interests of Audiology Distribution. Employee further acknowledges that it is impossible to measure the monetary damages to Audiology Distribution by reason of breach of any of the provisions contained herein, and that in the event of a breach by Employee, Audiology Distribution shall be entitled to equitable relief, including the right to enjoin any party in violation of this agreement. Employee further understands and agrees that if a court shall hold any part of this covenant not to compete as unenforceable due to its general scope, duration or geographic restriction, then in such event Employee

---

[3]This Court notes that Audiology Distribution, LLC does business under the name HearUSA.

> agrees that the scope, duration or geographic restriction shall be amended to the greatest scope, longest period of time and the largest geographical area enforceable under the applicable law of the state.

ECF No. 38 Ex. 3.  The defendant's employment with HearUSA started on Friday, September 28, 2012.  She signed her employment offer and the covenant the following Monday, October 1, 2012.  Her employment offer contained her salary, a bonus provision, and a commission provision for the products she sold to her patients.

In Summer 2013, the defendant started to look into opening her own audiology business.  On August 15, 2013, the defendant obtained a certificate of limited liability company for "Hawkins Hearing." On September 6, 2013, on behalf of Hawkins Hearing, the defendant obtained a business loan.  Then on September 10, 2013, the defendant, again on behalf of Hawkins Hearing, obtained a business property lease for a property that was less than three miles from HearUSA's Weirton, West Virginia location.  A little over two weeks later, on September 27, 2013, the defendant faxed her resignation letter to her direct supervisor at HearUSA, and her last day of employment with HearUSA was October 11, 2013.  Prior to leaving HearUSA, the defendant told some of her patients that she was planning to leave and possibly open her own business.  After leaving, the defendant asserts that she received approximately 25 phone calls at her home from patients asking where she was, to which she responded she was opening her own business.  The defendant started seeing patients at her new location on November

7, 2013.  From November 7, 2013 through November 19, 2013, when the temporary restraining order became effective, the defendant had 25 appointments scheduled with 21 different patients.  Twenty of these patients were prior patients of HearUSA.

### III.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true.  Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments."  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure

56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## IV. Discussion

While the defendant did not separately identify each claim asserted against the plaintiff, this Court believes that the defendant asserts claims for economic duress, intentional infliction of emotional distress, libel, invasion of privacy, violations of West Virginia's Antitrust Act, and malicious

prosecution. Accordingly, this Court will address each claim in turn.

A.  Economic Duress

Under West Virginia law, economic or business duress occurs when "the [claimant] is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the [claimant] no reasonable alternative but to acquiesce, the [claimant] may void the transaction and recover any economic loss." Machinery Hauling, Inc. v. Steel of West Virginia, 384 S.E.2d 139, 142 (W. Va. 1989) (citations omitted). The plaintiff argues that the defendant has failed to state a claim for economic duress by failing to allege sufficient facts to prove the elements of the claim. Specifically, the plaintiff asserts that the complaint is devoid of any facts suggesting that the plaintiff engaged in wrongful, oppressive, or unconscionable conduct and further, the defendant cannot demonstrate that she had no reasonable recourse but to acquiesce to the plaintiff's alleged unreasonable offer of employment.

This Court, however, finds that the defendant has asserted sufficient facts to withstand the plaintiff's motion to dismiss as to her counterclaim for economic duress. Specifically, the defendant in her counterclaim seems to assert that the plaintiff engaged in wrongful conduct in forcing her to sign a covenant not to compete to retain employment. Further, she asserts that she did

not have any other available employment offers at the time and if she did not sign the covenant not to compete, she could not earn a livelihood, thereby, asserting that she had no other reasonable alternatives. While discovery may prove that the defendant cannot establish that such assertions amount to economic duress, the defendant has, at this time, stated a claim to relief that is plausible on its face.

B.  <u>Intentional or Reckless Infliction of Emotional Distress</u>

In order to prevail on a claim for intentional or reckless infliction of emotional distress, the West Virginia Supreme Court has held that a claimant must prove:

> (1) that the [counterclaim] defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the [counterclaim] defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from [its] conduct; (3) that the actions of the [counterclaim] defendant caused the [counterclaim] plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the [counterclaim] plaintiff was so severe that no reasonable person could be expected to endure it.

<u>Travis v. Alcon Laboratories, Inc.</u>, 202 W. Va. 369, 375 (1998). The plaintiff argues that the defendant has failed to allege any of the these required elements. The plaintiff specifically asserts that the defendant did not allege that the plaintiff acted with the intent to inflict emotional distress or that the defendant suffered from any emotional distress as a result of the conduct. The defendant responds by stating that the plaintiff's conduct of

forcing her to sign the covenant not to compete amounted to the intentional infliction of emotional distress.

This Court finds that the defendant has asserted sufficient facts to withstand the plaintiff's motion to dismiss as to her counterclaim for intentional or reckless infliction of emotional distress. The defendant outlined the conduct in her counterclaim that she believes constitutes conduct sufficient to assert a claim for the intentional or reckless infliction of emotional distress. Specifically, in paragraph four of her counterclaim she states that the plaintiff's actions in requiring her to sign a covenant not to compete caused her emotional distress. Again, like defendant's claim for economic duress, while discovery may prove that the defendant cannot establish that such assertions amount to the intentional or reckless infliction of emotional distress, the defendant has, at this time, stated a claim to relief that is plausible on its face.

C.  Libel or Invasion of Privacy

The elements necessary to establish a claim for libel in West Virginia are "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 77 (W. Va. 1983). The plaintiff argues that the defendant has failed to assert at least the first and last of these

elements. The plaintiff asserts that the defendant failed to set forth any statements or inferences that are capable of defamatory meaning, and even so, she has failed to allege that she was injured as a result of the alleged defamation.

First, this Court notes that "it is well established that although libel is generally perpetrated by written communication, it also includes defamation through the publication of pictures or photographs." Id. at 79. Here, the defendant states that the plaintiff has libeled her through the use of pictures of her and through the use of her name in advertisements that assert that she is still an employee of the plaintiff. In order to state a claim for defamation, however, the communications must have been defamatory. A communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 77 (quoting Restatement (Second) of Torts § 559 (1977)). The West Virginia Supreme Court has also described such communications as those that "reflect shame, contumely, and disgrace upon [the claimant]." Syl. pt. 1, Sprouse v. Clay Communication, Inc., 211 S.E.2d 427 (W. Va. 1975). Whether a statement is capable of defamatory meaning is a question of law for the courts to decide. Belcher v. Wal-Mart Stores, Inc., 568 S.E.2d 19 (W. Va. 2002). The defendant has failed to plead facts or even to make an assertion that the complained of communications harmed

her reputation, lowered her reputation in the community, or deterred third persons from her associating with her. The bare allegation that the communications were libelous is insufficient to state a claim for libel. Accordingly, this Court must dismiss the defendant's claim for libel.

In the same paragraph in which the defendant makes a claim for libel, she also states that the communications constituted an invasion of privacy. While closely related to a claim for defamation, invasion of privacy is a distinct theory of liability. Crump, 320 S. E. 2d at 81. The four categories of the invasion of privacy tort are: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Id. at 83. Initially, this Court notes that the defendant has not stated in her counterclaim which category of the invasion of privacy tort she is making a claim under, nor has she further elaborated on such claim in her response to the plaintiff's motion to dismiss. This Court cannot construct the defendant's claims for her. Small v. Enidcott, 998 F.2d 411, 417-18 (7th Cir. 1993). Even if it were inclined to do so, the only category that the defendant's claim may fall under is the appropriation of another's name of likeness. The invasion of privacy tort for appropriation "has primarily served to prevent the emotional harm

12

which results from the unauthorized use of an individual's name or likeness to promote a particular product or service." The defendant has failed to state that any of the plaintiff's actions concerning the alleged invasion of privacy caused her emotional harm. Accordingly, even if this Court were to attempt to construct the defendant's claim for her, such a claim would ultimately fail based on her pleadings. Thus, defendant's claim for invasion of privacy must be dismissed.

D.  Violations of West Virginia's Antitrust Act

The defendant seems to assert two claims under the West Virginia Antitrust Act ("WVATA"). While the defendant does not state what sections her claims fall under, the claims seem to be made under §§ 47-18-3(a) and 47-18-4. The West Virginia Supreme Court has stated that courts should analyze WVATA claims "under the guidance provided by federal law." Kessel v. Monogalia County General Hosp. Co., 648 S.E.2d 366, 381 (W. Va. 2007). To state a claim under § 47-18-3(a) of the West Virginia Antitrust Act ("WVATA"), a claimant must allege that there was a conspiracy and that the "concerted action imposed an unreasonable restraint on trade." Princeton Ins. Agency, Inc. v. Erie Ins. Co., 690 S.E.2d 587, 598 (W. Va. 2009). The plaintiff argues that the defendant has failed to allege facts to demonstrate that the covenant not to compete is an unreasonable restraint on trade. The defendant

responds by only arguing that she does not have to prove her case at this stage in the litigation.

While the defendant may not have to prove her case at this stage of the litigation, she still must state a claim for relief that is plausible on its face. The allegation that the covenant not to compete is an unreasonable restraint on trade is not plausible. Two approaches exist to demonstrate an unreasonable restraint on trade, which are the <u>per se</u> and rule of reason approaches. <u>Id.</u> at 598. As "[i]t is axiomatic that an employee's covenant not to compete with his employer is not a per se violation of antitrust law," the rule of reason must be applied in this case. <u>Reddy v. Community Health Foundation of Man</u>, 298 S.E.2d 368, 372 (W. Va. 1982). Under the rule of reason approach, a claimant must demonstrate "specifically how the alleged conspiratorial conduct adversely affected competition in the relevant geographic market." <u>Princeton Ins.</u>, 690 S.E.2d at 599. The defendant has only alleged that a restraint on trade or commerce exists in the West Virginia due to the plaintiff using covenants not to compete. Such an allegation does not raise the defendant's right to relief above the speculative level. Thus, this Court must dismiss the defendant's claim under § 47-18-3(a).

To assert a claim under § 47-18-4 of the WVATA, which is the provision of the WVATA that deals with monopolies, a claimant must establish: "(1) the possession of monopoly power; and (2) willful

14

acquisition or maintenance of that power -- as opposed to simply superior products or historic accidents." E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc., 637 F.3d 435, 441 (4th Cir. 2011) (citing Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 480 (1992)). The plaintiff argues that the defendant has failed to allege any facts describing the circumstances or extent of the plaintiff's power in the relevant market or any facts describing the circumstances or extent of the plaintiff's alleged willful acquisition or maintenance of that power. The defendant again responds that she does not have to prove her case at this time.

This Court finds that the defendant failed to plead sufficient facts to state a claim for relief under § 47-18-4. While the defendant asserts that the plaintiff maintained a monopoly in the audiology business, such an allegation by itself is insufficient as it is merely conclusory. The defendant fails to state any facts that support her claim that the plaintiff did in fact maintain a monopoly and that such a monopoly was willfully acquired or maintained. Accordingly, this Court must dismiss defendant's claim under § 47-18-4.

E.  Malicious Prosecution

To assert a claim for malicious prosecution, the claimant must prove: "(1) that the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated

favorably to [claimant]." Clark v. Druckman, 624 S.E.2d 864, 870-71 (W. Va. 2005) (quoting Syl. pt. 1, Lyons v. Davy-Pocahontas Coal Co., 84 S.E. 744 (1915)). The plaintiff argues that the defendant has not pled any facts that would establish that the plaintiff lacked reasonable cause in commencing the current action. The plaintiff also asserts that the defendant has not pled facts that would establish that it acted with malice and further, argues that the action is still pending.

This Court finds that the defendant has not stated a claim on which relief may be granted at this time. The defendant is asserting a claim for malicious prosecution relating to this action prior to this action terminating. The third element of a malicious prosecution case requires that the action be terminated, and be terminated in the claimant's favor. Accordingly, this Court finds that such a claim is premature and it must dismiss the defendant's claim for malicious prosecution without prejudice to refiling upon the termination of this action, if such action is in fact terminated in defendant's favor.[4]

## V. Conclusion

For the reasons stated above, the plaintiff's motion to dismiss as to the defendant's claims for libel, invasion of

---

[4]This Court notes that it is not stating that the defendant has asserted sufficient facts to establish the remaining elements of a malicious prosecution claim, only that the claim itself is premature regardless of the facts presented as to the other remaining elements.

privacy, violations of the West Virginia Antitrust Act, and malicious prosecution is hereby GRANTED and the plaintiff's motion to dismiss defendant's claims for intentional or reckless infliction of emotional distress and economic duress is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: February 5, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE