IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


AUDIOLOGY DISTRIBUTION, LLC
d/b/a HEARUSA,

      Plaintiff,

v.                                        Civil Action No. 5:13CV154
                                                           (STAMP)
JILL K. HAWKINS, individually
and d/b/a HAWKINS HEARING, LLC,

      Defendant.


**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO AMEND THE COUNTERCLAIM**

## I. Procedural History

On November 6, 2013, the plaintiff in the above-styled civil
action filed a complaint against the defendant alleging claims for
breach of contract, breach of the duty of loyalty, and tortious
interference with prospective contractual relations resulting from
the defendant's alleged violation of a covenant not to compete
("the covenant").  Thereafter, the plaintiff filed a motion for a
temporary restraining order and preliminary injunction and a motion
to expedite discovery, to which the defendant responded in
opposition and the plaintiff replied.  This Court then held a
hearing on the motion for temporary restraining order on November
12, 2013.  At the hearing, this Court granted the plaintiff's
motion for temporary restraining order, finding at that time that
the plaintiff had satisfied the requirements for such order.  This
Court entered an order confirming the pronounced order and

confirming the date for the hearing regarding a preliminary injunction. On December 10, 2013, this Court held the hearing on the motion for a preliminary injunction. At this hearing, the Court denied the plaintiff's motion for a preliminary injunction without prejudice to refiling upon the completion of further discovery as to the irreparable harm requirement. This Court entered an order confirming this pronounced order. Thereafter, following an appeal of that order, the United States Court of Appeals for the Fourth Circuit affirmed this Court's findings.

Prior to the hearing concerning the preliminary injunction, the defendant filed her answer to the plaintiff's complaint. The defendant also filed a counterclaim against the plaintiff. This Court believes the counterclaim asserted claims for economic duress, emotional distress, libel, invasion of privacy, a violation of the West Virginia Antitrust Act, and malicious prosecution. The plaintiff filed a motion to dismiss the counterclaim, which this Court denied insomuch as it sought to dismiss the defendant's counterclaims for economic duress and emotional distress and granted insomuch as it sought to dismiss the defendant's claims for libel, invasion of privacy, a violation of the West Virginia Antitrust Act, and malicious prosecution.

The defendant has now filed a motion to amend her counterclaim, in which she asserts that she has adopted the deficiencies noted in the Court's opinion granting in part and

denying in part plaintiff's motion to dismiss.  The defendant does not provide any further explanation as to why her motion to amend should be granted.  The plaintiff filed a response to the motion to amend, arguing that the defendant's attempt to re-plead her counterclaims is futile and the only new allegations contained in the amended counterclaim are unsupported legal conclusions.  The defendant did not file a reply.

This motion is now ripe for disposition.  For the reasons set forth below, this Court denies the defendant's motion to amend her counterclaim.

## II.  Facts[1]

Defendant, Jill K. Hawkins, is a licensed audiologist in West Virginia.  She has her masters and doctorate degrees in audiology.  After the company she worked for from 2000 to 2004 closed, she and a colleague opened TriState Audiology in Weirton, West Virginia.  Initially, the defendant was a 49% shareholder of TriState Audiology.  In October 2007, the defendant no longer owned any portion of TriState Audiology but stayed with the company as an employee and sole audiologist.[2]  At some point in late 2011 or

---

[1]For purposes of deciding this motion, this Court, for the most part, adopts the facts as set forth in the plaintiff's complaint and as developed by testimony at the hearing on the motion for a preliminary injunction.

[2]The defendant indicated during her testimony that TriState Audiology also employed "a couple doctoral residents two years in a row" but that she was the main audiologist.

early 2012, the defendant learned that TriState Audiology may be sold.  In Spring 2012, the defendant met with Richard Whitman ("Whitman"), HearUSA's Vice President of Business Development, where she learned that HearUSA was considering purchasing TriState Audiology.  HearUSA did acquire TriState Audiology on or about September 27, 2012.

Prior to the acquisition, the defendant met with Whitman at HearUSA's corporate offices in Florida to discuss potential employment with HearUSA upon its purchase of TriState Audiology. At this meeting, the defendant and Whitman discussed the terms of her potential employment, which included a discussion of the covenant not to compete.  Whitman explained to the defendant that signing the covenant not to compete was a requirement of employment with HearUSA.  The covenant states in pertinent part:

> For and in consideration of employment with the Company Employee hereby covenants and agrees that for a period of twelve months following the termination of employment for Audiology Distribution,[3] Employee shall not, directly or indirectly, compete with Audiology Distribution within a 10 mile radius wherein Employee performed services under its employment with the Company for or on behalf of Audiology Distribution, and that this non-compete covenant specifically includes, but is not limited to, contacting the customers, clients and prospective customers and clients of Audiology Distribution. Employee acknowledges that the restrictions and obligations set forth and imposed herein will not prevent Employee from obtaining gainful employment in Employee's field of expertise or cause Employee undue hardship, and that the restrictions imposed herein are reasonable and

---

[3]This Court notes that Audiology Distribution, LLC does business under the name HearUSA.

necessary to protect the legitimate business interests of Audiology Distribution. Employee further acknowledges that it is impossible to measure the monetary damages to Audiology Distribution by reason of breach of any of the provisions contained herein, and that in the event of a breach by Employee, Audiology Distribution shall be entitled to equitable relief, including the right to enjoin any party in violation of this agreement. Employee further understands and agrees that if a court shall hold any part of this covenant not to compete as unenforceable due to its general scope, duration or geographic restriction, then in such event Employee agrees that the scope, duration or geographic restriction shall be amended to the greatest scope, longest period of time and the largest geographical area enforceable under the applicable law of the state.

ECF No. 38 Ex. 3. The defendant's employment with HearUSA started on Friday, September 28, 2012. She signed her employment offer and the covenant the following Monday, October 1, 2012. Her employment offer contained her salary, a bonus provision, and a commission provision for the products she sold to her patients.

In Summer 2013, the defendant started to look into opening her own audiology business. On August 15, 2013, the defendant obtained a certificate of limited liability company for "Hawkins Hearing." On September 6, 2013, on behalf of Hawkins Hearing, the defendant obtained a business loan. Then on September 10, 2013, the defendant, again on behalf of Hawkins Hearing, obtained a business property lease for a property that was less than three miles from HearUSA's Weirton, West Virginia location. A little over two weeks later, on September 27, 2013, the defendant faxed her resignation letter to her direct supervisor at HearUSA, and her last day of employment with HearUSA was October 11, 2013. Prior to leaving

HearUSA, the defendant told some of her patients that she was planning to leave and possibly open her own business. After leaving, the defendant asserts that she received approximately 25 phone calls at her home from patients asking where she was, to which she responded she was opening her own business. The defendant started seeing patients at her new location on November 7, 2013. From November 7, 2013 through November 19, 2013, when the temporary restraining order became effective, the defendant had 25 appointments scheduled with 21 different patients. Twenty of these patients were prior patients of HearUSA.

## III. Applicable Law

Although Rule 13 controls the pleading standards for a counterclaim or crossclaim, an amendment to add a counterclaim is governed by Rule 15. Fed. R. Civ. P. 13 advisory committee's note (noting the abrogation of Rule 13(f) and the use of Rule 15 in its place). Federal Rule of Civil Procedure 15(a)(1)(A) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, courts are to grant leave freely when justice so requires. Id.

"A motion to amend may be denied when it has been unduly delayed[,] when allowing the motion would prejudice the

nonmovant[,]" is based on bad faith, or would be futile. <u>Newport News Holdings Corp. v. Virtual City Vision, Inc.</u>, 650 F.3d 423, 439 (4th Cir. 2011) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). Further, a court has broad discretion to grant or deny leave to amend "based upon a balancing of the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained." <u>Barnes Group, Inc. v. C&C Products, Inc.</u>, 716 F.2d 1023, 1035 n.35 (4th Cir. 1993). However, the United States Court of Appeals for the Fourth Circuit has held that "delay alone, without prejudice, does not support the denial of a motion for leave to amend." <u>CSX Transp., Inc. v. Gilkison</u>, 406 F. App'x 723, 732 n.4 (4th Cir. 2010) (citing <u>Deasy v. Hill</u>, 833 F.2d 38, 41 (4th Cir. 1987)).

## IV. <u>Discussion</u>

The defendant attempts to re-plead her claims for libel, invasion of privacy, violations of the West Virginia Antitrust Act, and malicious prosecution. Accordingly, this Court will discuss each re-plead counterclaim in turn.

A. <u>Libel</u>

The elements necessary to establish a claim for libel in West Virginia are "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher;

and (6) resulting injury." Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70, 77 (W. Va. 1983). "[I]t is well established that although libel is generally perpetrated by written communication, it also includes defamation through the publication of pictures or photographs." Id. at 79.

Here, the defendant states that the plaintiff has libeled her through the use of her picture and name in association with HearUSA in advertisements. In order to state a claim for defamation, however, the communications must have been defamatory. A communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 77 (quoting Restatement (Second) of Torts § 559 (1977)). The West Virginia Supreme Court has also described such communications as those that "reflect shame, contumely, and disgrace upon [the claimant]." Syl. pt. 1, Sprouse v. Clay Communication, Inc., 211 S.E.2d 427 (W. Va. 1975).

In conjunction with her claim for libel, the defendant now asserts that the libel "harmed her reputation, caused others question her good reputation, and deterred potential clients from association or dealing with Hawkins." ECF No. 65 Ex. 1 *3. She also asserted that it caused her "to be ridiculed[,]" caused "her veracity to be questioned," and caused her "to be subjected to shame, contumely and disgrace."

These additional allegations are nothing more than conclusory recitations of the above stated law concerning libel. While a court must accept all well-pled facts contained in the complaint as true when assessing a pleading, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). Accordingly, because the new assertions concerning her claim for libel are nothing more than that, allowing the amendment of the counterclaim would be futile, as it still fails to state a claim on which relief may be granted.

B.    Invasion of Privacy

While closely related to a claim for defamation, invasion of privacy is a distinct theory of liability. Crump, 320 S. E. 2d at 81. The four categories of the invasion of privacy tort are: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Id. at 83.

In this Court's original opinion dismissing the defendant's counterclaim for invasion of privacy, this Court noted that the defendant did not state which invasion of privacy tort she was

asserting and this Court could not construct her claim for her. Further, this Court stated that even if it were to construe the defendant's claim as a claim for the appropriation of another's name or likeness, the counterclaim would still fail as she failed to plead that any alleged appropriation caused emotional harm. In light of this ruling, the defendant has now included the following statement regarding her invasion of privacy counterclaims: "HearUSA's conduct was an unreasonable intrusion or subversion of Hawkins' privacy, HearUSA's [sic] appropriated Hawkins' likeness, caused unreasonable publicity to her private life, which conduct placed Hawkins in a false light before the public and thus has caused Hawkins great emotional harm." ECF No. 65 Ex. 1 *3. The defendant has merely made a general statement that the plaintiff has committed all four invasion of privacy torts. Because these are unsupported legal conclusions, the defendant has again failed to state a claim for an invasion of privacy tort upon which relief may be granted. Accordingly, allowing the amendment as it relates to defendant's invasion of privacy counterclaims would be futile.

C.   West Virginia Antitrust Act Violations

The defendant cites three different sections of the West Virginia Antitrust Act ("WVATA") in her amended counterclaim. Specifically, she cites West Virginia Code §§ 47-18-3(b)(1)(A), 47-18-3(a)(3), 47-18-4. Initially, this Court notes that a § 47-18-3(a)(3) does not exist. Instead, a § 47-18-3(a) exists as

10

does a § 47-18-3(b)(3), and, therefore, this Court will assume that the defendant is attempting to assert a claim under either of those statutes.    This  Court  will  first  address  the  defendant's counterclaims  brought  under  §  47-18-3,  and  then  discuss  her counterclaim under § 47-18-4.

    i.    <u>West Virginia Code § 47-18-3</u>

To  state  a  claim  under  §  47-18-3  of  the  West  Virginia Antitrust Act ("WVATA"), a claimant must allege that there was a conspiracy and that the "concerted action imposed an unreasonable restraint on trade." <u>Princeton Ins. Agency, Inc. v. Erie Ins. Co.</u>, 690  S.E.2d  587,  598  (W.  Va.  2009).    Two  approaches  exist  to demonstrate an unreasonable restraint on trade, which are the <u>per se</u>  and  rule  of  reason  approaches.    <u>Id.</u>  at  598.    As  "[i]t  is axiomatic  that  an  employee's  covenant  not  to  compete  with  his employer  is  not  a  per  se  violation  of  antitrust  law,"  the  rule  of reason must be applied in this case.  <u>Reddy v. Community Health Foundation of Man</u>, 298 S.E.2d 368, 372 (W. Va. 1982).    Under the rule of reason approach, a claimant must demonstrate "specifically how    the    alleged    conspiratorial    conduct    adversely    affected competition  in  the  relevant  geographic  market."    <u>Princeton Ins.</u>, 690 S.E.2d at 599.  In doing so, it is not sufficient to only show economic injury to the party asserting the claim, but instead the party  must  show  "injury  to  competition  in  the  form  of  increased cost, reduced supply of services, or harm to the patient."  <u>Patel</u>

v. Scotland Memorial Hosp., No. 3:94CV00284, 1995 WL 319213 at *6
(M.D.N.C. Mar. 31, 1995); see also Princeton Ins., 690 S.E.2d at
599 (quoting Patel).

In this Court's original opinion, it found that the defendant
had only alleged that a restraint on trade or commerce existed in
the West Virginia due to the plaintiff using covenants not to
compete. This Court found such conclusory allegation to be
insufficient to state a claim at that time. In her amended
counterclaim, the defendant now asserts the following concerning
her claim under § 47-18-3:

> This concerted action [of having employees sign covenants
> not to compete] had as its sole purpose the furtherance
> of a conspiracy which imposed an unreasonable restraint
> of [sic] trade or commerce in the State of West Virginia
> and caused economic duress to those adversely affected
> thereby, including Hawkins . . . . This concerted action
> was designed and imposed to eliminate competition, at
> least by Hawkins, or those with whom she would associate,
> in the hearing aid business, which enabled HearUSA to
> inflate costs of its goods services which misconduct was
> Hawkins' primary reason for termination of her employment
> with HearUSA.

ECF No. 65 Ex. 1 *4 (emphasis added).

This Court again finds that these allegations fail to state a
claim upon which this Court may grant relief. The defendant stated
that the plaintiff is in a conspiracy imposing an unreasonable
restraint on trade in West Virginia. When attempting to provide
factual support for this proposition, however, the defendant only
stated that the practice of using such covenants would eliminate
competition "at least by Hawkins." Assertions concerning Hawkins

12

alone cannot be considered sufficient to state a claim for the "relevant geographic market" of the State of West Virginia. Accordingly, this Court must deny the defendant's motion to amend the complaint as to any claims brought under § 47-18-3.

    ii.   <u>West Virginia Code § 47-18-4</u>

To state a claim under § 47-18-4 of the WVATA, which is the provision of the WVATA that deals with monopolies, a claimant must establish: "(1) the possession of monopoly power; and (2) willful acquisition or maintenance of that power -- as opposed to simply superior products or historic accidents." <u>E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.</u>, 637 F.3d 435, 441 (4th Cir. 2011) (citing <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 480 (1992)). Like claims under § 47-18-3, "a [party] making monopoly and attempted monopoly claims must allege a relevant geographic market to help the court determine whether the [other party] has monopoly power." <u>E.I. du Pont de Nemours and Co. v. Kolon Industries</u>, 637 F.3d 435, 339 (4th Cir. 2011); <u>see</u> <u>Kessel v. Monongalia County General Hosp. Co.</u>, 648 S.E.2d 366, 381 (W. Va. 2007) (stating that courts should analyze WVATA claims "under the guidance provided by federal law.").

In its original opinion dismissing the defendant's attempt at asserting a claim under this section, this Court found that the defendant had only made a conclusory statement that the plaintiff had a monopoly on the audiology business and she failed to state

13

that there was a willful acquisition or maintenance of the monopoly. In her proposed amended counterclaim, the defendant adds additional verbiage to her claim, asserting that based on the covenant not to compete, the plaintiff has a monopoly in the restricted ten-mile radius and if there are no competitors, the plaintiff could continue to charge its inflated prices for goods and services. First, these additional statements still do not address whether the plaintiff has willfully acquired or maintained this alleged monopoly power. Second, while the defendant asserts that the relevant geographic market is the State of West Virginia, she has failed to provide this Court with any allegation that the plaintiff has a monopoly outside of the ten-mile radius encompassed by the covenant not to compete. Third, this Court finds that even if the relevant geographic market was the ten-mile radius, there is no assertion that the plaintiff is preventing any other entity from entering the audiology business other than the defendant. A monopoly is defined as "[c]ontrol or advantage obtained by one supplier or producer over the commercial market within a given region." Black's Law Dictionary 1160 (10th ed. 2014). A business allegedly only preventing one person or entity from entering a given region without further allegations that any other person or entity is so prevented cannot be said to meet the definition of controlling a "given region." Accordingly, the defendant's amended counterclaim under § 47-18-4 must fail, as the amendment is futile.

The claim in its proposed amended form still fails to state a claim upon which relief may be granted.

D.   Malicious Prosecution

To assert a claim for malicious prosecution, the claimant must prove: "(1) that the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to [claimant]." Clark v. Druckman, 624 S.E.2d 864, 870-71 (W. Va. 2005) (quoting Syl. pt. 1, Lyons v. Davy-Pocahontas Coal Co., 84 S.E. 744 (1915)).  In the defendant's original counterclaim and now in her amended counterclaim, the defendant asserts a claim for malicious prosecution relating to the prosecution of this action.  As this Court has previously stated, and will state again, such claim is premature.  This action has not terminated, and therefore, the fourth element, which requires a favorable termination cannot and is not established.  Accordingly, any amendment concerning the defendant's malicious prosecution claim must be dismissed as futile because the defendant cannot plausibly state a claim for malicious prosecution upon which relief may be granted.

## V.   Conclusion

For the reasons stated above, the defendant's motion to amend the counterclaim is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    July 17, 2014

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE