IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


AUDIOLOGY DISTRIBUTION, LLC
d/b/a HEARUSA,

        Plaintiff,

v.                                  Civil Action No. 5:13CV154
                                                  (STAMP)
JILL K. HAWKINS, individually
and d/b/a HAWKINS HEARING, LLC,

        Defendant.


**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S COMBINED MOTION**
**TO CORRECT AND MOTION FOR SUMMARY JUDGMENT,**
**GRANTING THE PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND**
**DENYING THE DEFENDANT'S SUPPLEMENTAL**
**MOTION FOR SUMMARY JUDGMENT**


I.  Procedural History

On November 6, 2013, the plaintiff filed a complaint against the defendant, alleging claims for breach of contract, breach of the duty of loyalty, and tortious interference with prospective contractual relations. This conduct allegedly resulted from the defendant's violation of a covenant not to compete. Thereafter, the plaintiff filed a motion for a temporary restraining order and preliminary injunction and a motion to expedite discovery. This Court, following a hearing, granted the plaintiff's motion for a temporary restraining order. This Court then held a hearing on the plaintiff's motion for a preliminary injunction. At the conclusion of this hearing, the Court denied the plaintiff's motion for a

preliminary injunction without prejudice because the plaintiff failed to sufficiently demonstrate irreparable harm. ECF No. 43. The plaintiff appealed this Court's decision, which the United States Court of Appeals for the Fourth Circuit affirmed. ECF No. 70.

Prior to the hearing on the preliminary injunction, the defendant filed both her answer and a counterclaim against the plaintiff. The defendant's counterclaim asserted claims for economic duress, libel, bad faith, a violation of the West Virginia Antitrust Act, malicious prosecution, and intentional infliction of emotional distress ("IIED"). ECF No. 27. The plaintiff then filed a motion to dismiss the defendant's counterclaim, arguing that the defendant failed to assert sufficient facts to support such counterclaims. The defendant responded, claiming that she stated sufficient factual support for her allegations. This Court then granted the plaintiff's motion to dismiss in part and denied the motion in part. ECF No. 57. Specifically, this Court granted the plaintiff's motion to dismiss as to the libel, invasion of privacy, violations of the West Virginia Antitrust Act, and malicious prosecution claims. However, this Court denied the plaintiff's motion regarding the IIED and economic duress claims.

Following that memorandum opinion and order, the defendant filed a motion to amend her counterclaim. Specifically, the defendant claimed that she resolved the inadequacies of her

counterclaims that this Court noted in its memorandum opinion granting in part and denying part the plaintiff's motion to dismiss. Accordingly, she sought to re-plead her counterclaims for libel, invasion of privacy, violations of the West Virginia Human Rights Act, and malicious prosecution. However, she provided no further explanation as to why her motion to amend should be granted. The plaintiff filed a response to the motion to amend, arguing that the defendant's attempt to re-plead her counterclaims was futile and that the only new allegations contained in the amended counterclaim were unsupported legal conclusions. This Court denied the defendant's motion, finding that her proposed counterclaims and allegations were both conclusory and futile. ECF No. 70.

Since the denial of the defendant's motion to amend her counterclaim, the parties each filed the following motions that are the subject of this memorandum opinion and order: (1) the defendant filed a combined motion to correct and motion for summary judgment; (2) the plaintiff filed a motion for partial summary judgment; and (3) the defendant filed a supplemental motion for summary judgment. Those motions are discussed in the next part of this memorandum opinion and order. For the reasons set forth below, the defendant's combined motion to correct and motion for summary judgment and the defendant's supplemental motion for summary

judgment are denied.  Further, the plaintiff's motion for partial summary judgment is granted.

## II.  Facts

The defendant, Jill K. Hawkins, is a licensed audiologist in West Virginia.  She has her masters and doctorate degrees in audiology.  After the company she worked for from 2000 to 2004 closed, she and a colleague opened TriState Audiology in Weirton, West Virginia.  Initially, the defendant was a 49% shareholder of TriState Audiology.  In October 2007, the defendant no longer owned any portion of TriState Audiology but stayed with the company as an employee and sole audiologist.[1]  At some point in late 2011 or early 2012, the defendant learned that TriState Audiology may be sold.  In Spring 2012, the defendant met with Richard Whitman ("Whitman"), the plaintiff's Vice President of Business Development, where she learned that the plaintiff was considering purchasing TriState Audiology.  The plaintiff then acquired TriState Audiology on or about September 27, 2012.

On or around June 2012, prior to the acquisition, the defendant met with Whitman at the plaintiff's corporate offices in Florida to discuss potential employment upon the plaintiff's acquisition of TriState Audiology.  At this meeting, the defendant and Whitman discussed the terms of her potential employment, which

---

[1]The defendant indicated during her testimony that TriState Audiology also employed "a couple doctoral residents two years in a row" but that she was the main audiologist.

included a discussion of the covenant not to compete.   Whitman

explained to the defendant that signing the covenant not to compete

was a requirement of employment with the plaintiff.   The covenant

states in pertinent part:

> For and in consideration of employment with the Company
> Employee hereby covenants and agrees that for a period of
> twelve months following the termination of employment for
> Audiology Distribution,[2] Employee shall not, directly
> or indirectly, compete with Audiology Distribution within
> a 10 mile radius wherein Employee performed services
> under its employment with the Company for or on behalf of
> Audiology Distribution, and that this non-compete
> covenant specifically includes, but is not limited to,
> contacting the customers, clients and prospective
> customers and clients of Audiology Distribution.
> Employee acknowledges that the restrictions and
> obligations set forth and imposed herein will not prevent
> Employee from obtaining gainful employment in Employee's
> field of expertise or cause Employee undue hardship, and
> that the restrictions imposed herein are reasonable and
> necessary to protect the legitimate business interests of
> Audiology Distribution.   Employee further acknowledges
> that it is impossible to measure the monetary damages to
> Audiology Distribution by reason of breach of any of the
> provisions contained herein, and that in the event of a
> breach by Employee, Audiology Distribution shall be
> entitled to equitable relief, including the right to
> enjoin any party in violation of this agreement.
> Employee further understands and agrees that if a court
> shall hold any part of this covenant not to compete as
> unenforceable due to its general scope, duration or
> geographic restriction, then in such event Employee
> agrees that the scope, duration or geographic restriction
> shall be amended to the greatest scope, longest period of
> time and the largest geographical area enforceable under
> the applicable law of the state.

ECF No. 38 Ex. 3.  In addition to that discussion concerning the

covenant not to compete, the defendant received an electronic copy

---

[2]This Court notes that the plaintiff Audiology Distribution,
LLC does business under the name HearUSA.

of the covenant via email on June 22, 2012. Pursuant to her employment contract, the defendant was to report for her first day of work on October 1, 2012. However, the defendant allegedly began working for the plaintiff on Friday, September 28, 2012. On Monday, October 1, 2012, approximately two to three days later, she signed her employment offer and the covenant not to compete. Her employment offer contained her salary, a bonus provision, and a commission provision for the products she sold to her patients.

In Summer 2013, the defendant started to look into opening her own audiology business. On August 15, 2013, the defendant obtained a certificate of limited liability company for "Hawkins Hearing." On September 6, 2013, on behalf of Hawkins Hearing, the defendant obtained a business loan. Then on September 10, 2013, the defendant, again on behalf of Hawkins Hearing, obtained a business property lease for a property located less than three miles from the plaintiff's Weirton, West Virginia location. A little over two weeks later, on September 26, 2013, the defendant faxed her resignation letter to her direct supervisor. Her last day of employment with the plaintiff was October 11, 2013. Prior to resigning, the defendant told some of her patients that she planned to leave and possibly open her own business. After leaving, the defendant claims that she received approximately 25 phone calls at her home from patients asking where she was, to which she responded she was opening her own business. The defendant started seeing

patients at her new location on November 7, 2013. From November 7, 2013 through November 19, 2013, when the temporary restraining order became effective, the defendant scheduled 25 appointments with 21 different patients. Twenty of those patients were prior patients of the plaintiff.

Upon discovering that the defendant not only opened her own practice but also saw many of the plaintiff's former patients, the plaintiff filed a complaint against the defendant. Specifically, the plaintiff asserted claims for breach of contract, breach of the duty of loyalty, and tortious interference with prospective contractual relations. As mentioned earlier, this Court granted the plaintiff's request for a temporary restraining order against the defendant, but denied the plaintiff's request for a preliminary injunction. Further, this Court granted in part and denied in part the plaintiff's motion to dismiss the defendant's counterclaims with the exception of the defendant's economic duress and IIED counterclaims. At issue now is the defendant's combined motion to correct under Rule 60 and motion for summary judgment, the plaintiff's motion for partial summary judgment, and the defendant's supplemental motion for summary judgment. Those motions are discussed below.

A.  <u>Defendant's Combined Motion to Correct and Motion for Summary Judgment</u>

The defendant first filed a motion to correct pursuant to Federal Rule of Civil Procedure 60(a) ("Rule 60") regarding this Court's memorandum opinion and order denying the plaintiff's motion for a preliminary injunction.  <u>See</u> ECF No. 43.  Further, within that motion to correct, the defendant includes a motion for summary judgment.

Regarding the motion under Rule 60, the defendant requests this Court to "revisit the issue" of the validity and enforceability of the covenant not to compete.  The defendant argues that the primary issue here is that the employment contract and covenant not to compete were signed four days after the plaintiff employed the defendant.  To prove this, the defendant alleges that she started working for the plaintiff on September 28, 2012.  Then, on October 1, 2012, the defendant signed the employment agreement and the covenant not to compete.  The defendant then points out that under <u>Environmental Products Co. v. Duncan</u>, 285 S.E.2d 889, 890 (W. Va. 1981), continued employment is not adequate consideration for a new contract.  The defendant claims that two contracts are at issue, specifically the employment contract and the covenant not to compete.  Further, the defendant claims that the only consideration offered for the alleged second contract, the covenant not to compete contract, was continued

employment. Therefore, because no valid consideration existed for the "second" contract, the contract should be considered invalid and thus unenforceable. Because of this, the defendant requests this Court under Rule 60 to (1) include more analysis and findings on this issue than provided in the memorandum opinion (ECF No. 43), and (2) to correct the memorandum opinion to incorporate such findings and analysis. Further, the defendant then asserts that once this Court includes the analysis the defendant claims is lacking, then no material issues of fact will exist and thus summary judgment should be granted in favor of the defendant.[3]

The plaintiff responded to the defendant's motion to correct, arguing that the Rule 60 motion was unfounded, and that the motion for summary judgment should be denied. ECF No. 79. Specifically, the plaintiff claims that Rule 60 is intended to apply to only clerical or ministerial mistakes, not to relitigate decided issues. Following the plaintiff's response, the defendant filed her reply where she claims that Rule 60 does apply in this situation. ECF No. 84.

---

[3]In particular, the defendant's combined motion provides the following argument regarding the motion for summary judgment: "Once this [Court grants the defendant's motion to correct and] this analysis is made, there will be no material issue of fact, and Defendant, Jill Hawkins will be entitled to summary judgment." ECF No. 74.

B.  Plaintiff's Motion for Partial Summary Judgment

On September 8, 2014, the plaintiff filed a motion for partial summary judgment, seeking judgment in its favor for the breach of contract claim and for the defendant's counterclaims of economic duress and IIED.  ECF No. 80.  The plaintiff first argues that adequate consideration existed to make the contract valid and enforceable.  Specifically, the plaintiff provides that the defendant knew about the covenant not to compete for more than four months before starting her employment.  Further, her initial employment, salary, benefits, and bonuses all constituted sufficient consideration.  Thus, the plaintiff claims that the fact the defendant failed to sign the covenant not to compete until October 1, 2013, is immaterial.  Further, because the clause is valid, the plaintiff asserts that the clause is enforceable due to its reasonable scope.  Accordingly, the plaintiff requests this Court to find that the defendant breached the employment contract's covenant not to compete.  Next, the plaintiff argues that it is entitled to summary judgment regarding the defendant's counterclaims of economic duress and IIED.  First, the plaintiff asserts that the covenant not to compete is not only valid and reasonable, but also is the product of the parties' freedom to contract.  Second, the plaintiff claims that having the defendant sign the covenant not to compete fails to show any form of extreme or outrageous conduct.

The defendant then filed her response to the plaintiff's motion for partial summary judgment. ECF No. 85. In her response, the defendant claims that she satisfied the elements for economic duress. Specifically, the defendant asserts that because she was essentially "threatened" with an ultimatum of signing the covenant not to compete or allegedly face termination of her employment, she suffered economic duress.

Following the defendant's response, the plaintiff filed its reply to its motion for partial summary judgment. ECF No. 88. Plaintiff first asserts that the defendant misrepresented the record in her response. Specifically, the plaintiff claims that it never "threatened" the defendant with termination of her employment if she never executed the employment agreement. Further, the plaintiff claims that no record exists to show that the parties had a mutual understanding that the covenant not to compete would be unenforced by the plaintiff. Notwithstanding the defendant's alleged misrepresentations, the plaintiff argues that the defendant fails to demonstrate that any issues of material fact exist.

Second, the plaintiff again argues that it is entitled to summary judgment regarding the defendant's counterclaim of economic duress. The plaintiff claims that the defendant still fails to present concrete evidence to support her claim for economic duress. In particular, the plaintiff argues that the economic duress claim in this civil action is distinguished from

_Machinery Hauling, Inc. v. Steel of West Virginia_, 384 S.E.2d 139 (W. Va. 1989), in that the defendant faced no threats or ultimatums regarding the covenant not to compete. Finally, the plaintiff asserts that it is entitled to summary judgment regarding the defendant's counterclaim for IIED. Here, the plaintiff alleges that the defendant's IIED claim is predicated on several counterclaims this Court already dismissed. _See_ ECF No. 57. In addition, the plaintiff argues that the defendant presents insufficient evidence to satisfy her IIED claim. For those reasons, the plaintiff claims that this Court should grant its motion for partial summary judgment.

C.   Defendant's Supplemental Motion for Summary Judgment

In addition to her combined motion to correct and motion for summary judgment, the defendant also filed a supplemental motion for summary judgment. ECF No. 76. In her supplemental motion for summary judgment, the defendant argues that she is entitled to summary judgment in her favor regarding the plaintiff's breach of contract claim. Specifically, the defendant asserts that the plaintiff's corporate policies in its employee handbook render the contract at issue unenforceable. The defendant points to language in the handbook that it claims requires the CEO, COO, or CFO of the plaintiff to sign all agreements pertaining to an employee's employment contract. Further, the defendant also claims that the plaintiff's acknowledgment form provides a similar requirement.

According to the defendant, the covenant not to compete was signed by none of these allegedly necessary parties. Therefore, the covenant is unenforceable. Thus, because mutual assent is lacking, she argues that this Court should grant her supplemental motion for summary judgment.

The plaintiff then filed its response in opposition to the supplemental motion for summary judgment. ECF No. 86. First, the plaintiff asserts that the supplemental motion for summary judgment is based on inadmissible evidence, namely the employee handbook and acknowledgment form. Second, the plaintiff argues that the plain language of the employee handbook and acknowledgment form undercuts the defendant's argument, citing to language that says the provisions of the handbook "do not confer any rights or privileges upon employees." Finally, the plaintiff asserts that even if a high-level executive did not sign the employment contract, mutual assent existed so that the contract can be enforced against the defendant.

After the plaintiff filed its response, the defendant filed her reply to the supplemental motion for summary judgment. ECF No. 87. The defendant first claims that the handbook should be admissible because it was uncovered through discovery and incorporates already admissible business records. Second, the defendant disputes the plaintiff's interpretation of the handbook's language that states, "[d]oes not confer any rights or privileges

13

upon you." Further, the defendant here also believes that the covenant not to compete is a significant departure from the language in the handbook, and thus warrants the necessary signatures that she argues are missing from the employment contract. Finally, the defendant asserts that no mutual assent existed.

## III.  <u>Applicable Law</u>

### A.  <u>Motion to Correct under Rule 60(a)</u>

Federal Rule of Civil Procedure 60(a) states in pertinent part:

> The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice[.]

"Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another." <u>Dura-Wood Treating Co. v. Century Forest Indus.</u>, 694 F.2d 112, 114 (5th Cir. 1982). Based on Rule 60, courts have the power and duty "to correct judgments which contain clerical errors or judgments which have been issued due to inadvertence or mistake." <u>American Trucking Ass'ns v. Frisco Transp. Co.</u>, 358 U.S. 133, 146 (1958). Such action may be taken based "on motion or on its own, with or without notice." Fed. R. Civ. P. 60(a). However, although a court may correct clerical errors "to reflect what was intended at the time of the ruling,

'[e]rrors that affect substantial rights of the parties . . . are beyond the scope'" of Rule 60(a). <u>Weeks v. Jones</u>, 100 F.3d 124, 128 (11th Cir. 1996) (quoting <u>Mullins v. Nickel Plate Mining Co.</u>, 691 F.2d 971, 973 (11th Cir. 1982); <u>see also</u> <u>Truskoski v. ESPN, Inc.</u>, 60 F.3d 74, 77 (2d Cir. 1995) (per curiam) ("[Rule 60(a)] permits only a correction for the purpose of reflecting accurately a decision that the court actually made."); <u>United States v. Whittington</u>, 918 F.2d 149, 150 n.1 (11th Cir. 1990) ("for Rule 60(a) purposes, a mistake of law is not a 'clerical mistake,' 'oversight,' or 'omission.'" (quoting <u>Warner v. City of Bay St. Louis</u>, 526 F.2d 1211, 1212 (5th Cir. 1976)). Thus, a "district court is not permitted . . . to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." <u>Burton v. Johnson</u>, 975 F.2d 690, 694 (10th Cir. 1992).

B. <u>Motion for Summary Judgment under Rule 56</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

As mentioned earlier, the parties each filed the following motions that are the subject of this memorandum opinion and order: (1) the defendant filed a combined motion to correct and motion for summary judgment; (2) the plaintiff filed a motion for partial summary judgment; and (3) the defendant filed supplemental motion for summary judgment.  Those motions are decided below in the order presented.

## A.  Defendant's Combined Motion to Correct and Motion for Summary Judgment

As indicated earlier, the defendant filed a combined motion to correct and motion for summary judgment.  This Court will address each one separately.  For the reasons provided, both of those motions are denied.

1. <u>Motion to Correct Under Rule 60(a)</u>

In her motion to correct under Rule 60(a), the defendant requests this Court to "revisit the issue" of the validity of the covenant not to compete. The defendant claims this Court erred in deciding the issue of the validity of the covenant not to compete. Specifically, she claims that this Court (1) provided insufficient analysis in its memorandum opinion and order finding that the covenant not to compete is enforceable and (2) that this Court referred to the covenant not to compete and employment contract as one contract when in fact they are two separate contracts. The defendant then argues that the primary issue here is that the employment contract and covenant not to compete were signed four days after the plaintiff employed defendant. To prove this, the defendant again states that she started working for the plaintiff on September 28, 2012. Then, on October 1, 2012, the defendant signed the employment agreement and the covenant not to compete. Further, the defendant claims that the only consideration offered for the alleged "second" contract, the covenant not to compete, was continued employment. Therefore, because continued employment is not adequate consideration, no valid consideration existed for the "second" contract. Accordingly, the contract should be considered invalid and thus unenforceable. The defendant provides that this properly describes the issue of this civil action, which is "that the employment contract and [covenant not to compete] were signed

18

four (4) days after [the defendant] became employed with [the plaintiff]." Because the defendant contends that this Court did not adequately focus or address this issue, the defendant requests under Rule 60 for this Court to include more analysis and findings on this issue than provided in its memorandum opinion (ECF No. 43), and to correct the memorandum opinion to incorporate such findings and analysis. Further, the defendant then asserts that once this Court includes the analysis that the defendant claims is lacking, then no material issues of fact will exist and thus summary judgment should be granted for the defendant.

As indicated above, Rule 60 permits correction at any time for "clerical mistakes" that arise from "oversights or omission[s]." <u>Weeks</u>, 100 F.3d at 128 (quoting Fed. R. Civ. P. 60(a)). However, it is abundantly clear that clerical mistakes do not include "errors of substantive judgment." <u>Jones v. Anderson-Tully Co.</u>, 722 F.2d 211, 212 (5th Cir. 1984) (per curiam). Thus, "errors that affect substantial rights of the parties . . . are beyond the scope of Rule 60(a)." <u>Mullins</u>, F.2d at 1212. Here, the defendant is requesting this Court to go well beyond correcting a clerical mistake. In the prior memorandum opinion and order that has the "alleged" error, this Court found that the employment contract seemed to be valid at the time of the hearing.[4] Further, this

---

[4]In its prior memorandum opinion and order (ECF No. 43), this Court determined that the contract seemed to be valid and that the covenant not to compete also seemed to be enforceable at the time

Court also determined that the covenant not to compete appeared reasonable and thus likely enforceable. Now, the defendant is seeking the following, as provided in their memorandum of law: "Defendant seeks to have this Court revisit the issue of the validity of the Covenant Not-to-Compete . . . and find it to be void since there was no consideration to Defendant to sign the Covenant on October 1, 2012, as she was at that time already an employee of [the plaintiff]." ECF No. 74. The defendant is asking this Court to completely reverse its position on a prior determination. This rises far beyond the level of a clerical mistake, and such a finding would obviously "affect substantial rights of the parties." <u>Mullins</u>, F.2d at 1212. Rule 60 does not permit such an action by this Court. Therefore, this Court denies the defendant's motion to correct under Rule 60.

2. <u>Defendant's Motion for Summary Judgment</u>

Notwithstanding the denial of the defendant's motion to correct under Rule 60(a), this Court turns next to the motion for summary judgment which the defendant combined with her motion to correct. As provided earlier, the defendant argues that this Court did not focus on the primary issue of this case, which is that the employment contract and covenant not to compete were allegedly

the plaintiff sought a preliminary injunction. This was found under this Court's determination of whether to grant a preliminary injunction against the defendant. However, this Court will completely resolve the validity and enforceability issue with this opinion.

signed four days after the plaintiff employed the defendant. Accordingly, the defendant again argues that continued employment is inadequate consideration and thus any resulting contract is invalid. The defendant believes that once this Court understands the alleged error it made, which is finding the employment contract valid and the covenant not to compete enforceable despite the four day span of time, then no issues of material fact will exist. Therefore, the defendant seems to assert that upon this Court's amendment to the analysis section of the prior opinion (ECF No. 43), then the remaining facts and applicable law will warrant granting summary judgment in favor of the defendant.

This Court does not disagree with the defendant in framing the issue of this civil action as discussed above. Further, this Court does not disagree with the defendant in that continued employment is inadequate consideration to uphold a covenant not to compete. Environmental Products Co. v. Duncan, 285 S.E.2d 889, 890 (W. Va. 1981). However, this Court disagrees with the defendant's determination that the employment contract and covenant not to compete should be treated as two separate contracts or that the contract is invalid.

Under West Virginia law, when a covenant not to compete is entered into after the commencement of at-will employment, "new consideration, apart from continued employment, must support the covenant." McGough v. Nalco Co., 496 F. Supp. 2d 729, 746 (N.D. W.

Va. 2007) (quoting <u>PEMCO Corp. v. Rose</u>, 257 S.E.2d 885, 889 (W. Va. 1979)); <u>see</u> Syl. Pt. 1, <u>Environmental Products Co., Inc. v. Duncan</u>, 285 S.E.2d 889 (W. Va. 1981).  For example, in <u>Environmental Products Co., Inc. v. Duncan</u>, an employee signed a contract containing a covenant not to compete after one and a half years of already working for the employer.  285 S.E.2d at 890.  In that case, the Supreme Court of Appeals of West Virginia held that new consideration needed to be furnished because the covenant not to compete was contracted for after employment commenced, again in that case for almost two years.  Thus, in <u>Duncan</u>, the covenant was rendered void.

Although new consideration must be furnished for covenants not to compete if contracted for after employment commences, a distinction exists when the covenant not to compete is either ancillary to or essentially part of the same transaction.  New consideration is unnecessary when the covenant not to compete is ancillary to the taking of employment and not a "later attempt to impose additional restrictions on an unsuspecting employee." <u>Fisher Bioservices, Inc. v. Bilcare, Inc.</u>, 06CV567, 2006 WL 1517382, at *10 (E.D. Pa. May 31, 2006); <u>see</u> <u>McGough</u>, 496 F. Supp. 2d at 749 ("Generally, a covenant signed prior to, contemporaneous with, or any time during employment is ancillary to employment.") (internal citations omitted).  Thus, when a restrictive covenant is part of the formation of the employment relationship, it is

supported by adequate consideration. <u>Nat'l Business Services, Inc.</u>
<u>v. Wright</u>, 2 F. Supp. 2d 701, 707-08 (E.D. Penn. 1998). Regarding
a more general contract law principle, "separate writings," here
the covenant not to compete and the employment agreement, "will be
construed together and considered to constitute one transaction
when the parties are the same, the subject matter is the same and
the relationship between the documents is clearly apparent."
<u>Ashland Oil, Inc. v. Donahue</u>, 223 S.E.2d 433, 437 (W. Va. 1976).

     In this civil action, this Court finds that the covenant not
to compete was part of the formation of the employment contract.
Thus, they are in essence one contract.  First, in an email dated
June 22, 2012, that pertained to her possible employment with the
plaintiff, the defendant received the covenant not to compete
attached to that email.  ECF No. 38 Ex. 1.  The email indicated
that the parties had discussed this covenant not to compete prior
to the defendant's acceptance of employment.  Further, this email
that contained the covenant not to compete was received on June 22,
2012, well before the date she executed the contract and covenant
not to compete, which was October 1, 2012.  In addition, the
defendant testified to having been informed of the covenant not to
compete prior to receiving the email containing it.  Therefore, the
covenant not to compete was clearly part of the contract formation
process before she began her employment.  As provided under <u>Ashland</u>
<u>Oil, Inc.</u>, here one transaction occurred because (1) the parties

were the same in both the employment contract and the covenant not to compete; (2) the subject matter, here the defendant's employment with the plaintiff, was the same; and (3) the documents clearly relate to each other. Further, she does not appear to be an "unsuspecting" employee, as indicated from her receipt of the covenant not to compete in late June 2012.

Second, the employment contract clearly states that her expected starting date of employment was October 1, 2012. ECF No. 38 Ex. 2. Whether she technically started on Friday, September 28, 2012 versus Monday, October 1, 2012, is immaterial because the employment contract and covenant not to compete were executed on October 1, 2012. However, the defendant believes this two to three day gap between her commencement of work and her actual execution of the contract means that new consideration must be furnished. The defendant relies heavily upon <u>Environmental Products Co., Inc. v. Duncan</u>, and similar cases, asserting that this gap of time created two separate agreements: one for her employment, which the defendant claims began on September 28, 2012, and one for the covenant not to compete, which the defendant claims began on October 1, 2012. However, <u>Duncan</u> is readily distinguishable. In <u>Duncan</u>, the employer contracted for the covenant not to compete approximately one and a half years after the employee began working for the employer, and offered essentially very few changes in the employee's salary in exchange for the covenant not to compete. As

the court stated, "[the employee's] contract, therefore, did not alter any benefits, conditions or terms of employment; it only imposed limitations. Those are void for lack of consideration." Here, the defendant's employment contract clearly provides that she was to begin working on October 1, 2012, and both the contract and the covenant not to compete were executed on that date. Even if she allegedly began working on September 28, 2012, the covenant not to compete was clearly part of the same transaction, as it was discussed and received on or about June 22, 2012. Because of this, no additional consideration was necessary.

Upon finding that no additional consideration is necessary, this Court finds that the contract is valid. As West Virginia law provides, the "elements of a contract are an offer and an acceptance supported by consideration." Syl. Pt. 1, First Nat'l Bank of Gallipolis v. Marietta Mfg. Co., 153 S.E.2d 172 (W. Va. 1967). None of the essential elements are missing in this contract at issue. As consideration for accepting the offer of employment, the defendant received a $65,000.00 salary, a bonus, and a commission provision for the equipment that she sold. Thus, the contract is valid. Further, after finding that this contract is valid, this Court can now determine whether the covenant not to compete is enforceable, pursuant to Reddy v. Community Health Foundation of Man, 298 S.E.2d 906, 915 (W. Va. 1982). Under West Virginia law, a covenant not to compete is enforceable so long as

it is reasonable pursuant to the "rule of reason standard."  <u>Id.</u>

A covenant not to compete is "reasonable only if it (1) is no

greater than is required for the protection of the employer, (2)

does not impose undue hardship on the employee, and (3) is not

injurious to the public."  <u>Id.</u> at 911.

This Court must determine whether the covenant is reasonable

on its face "if judicial scrutiny of it is to continue."  <u>Id.</u> at

915.  If this Court determines it is unreasonable on its face, the

covenant is deemed "void and unenforceable."  <u>Id.</u>  As the court in

<u>Reddy</u> stated:

> A covenant is unreasonable on its face when the
> restriction is excessively broad with respect to time or
> area, or if in the circumstances the true purpose of the
> covenant appears to be merely to repress the employee,
> and prevent him from leaving, rather than to protect the
> employer's business.  Good faith, on the other hand, is
> evidence of reasonableness.

<u>Id.</u> at 915-916.

If this Court determines that the covenant is reasonable on

its face, this Court must then determine whether the employer has

shown that it has interests that require protection.  <u>Gant v.</u>

<u>Hygeia Facilities Found</u>, 384 S.E.2d 842, 845 (W. Va. 1989).  To

determine whether an employer has interests that need protection,

a court must examine "the extent to which the employee may unjustly

enrich himself by appropriating an asset of the employer for which

the employee has not paid and using it against that very employer."

<u>Reddy</u>, 298 S.E.2d at 916.  Examples of situations where this may

occur "are those where the employer stands to lose his investment in employee training, have his trade secrets or customer lists converted by the employee, or have his market share threatened by the employee's risk-free entry into the employer's market." <u>Id.</u> Protectable interests do not include a former employee's acquired skills and information that "are of a general managerial nature, such as supervisory, merchandising, purchasing and advertising skills and information." Syl., <u>Helms Boys, Inc. v. Brady</u>, 297 S.E.2d 840 (W. Va. 1982). If the employer does have interests that require protection, the restrictive covenant is presumptively enforceable in its entirety. Syl. Pt. 3, <u>Reddy</u>.

In this case, the covenant is reasonable. The covenant not to compete is of limited duration and geographic scope, lasting only one year and applying to only a ten mile radius. Further, this restriction imposes no undue hardship on the defendant, and no indication exists that it is injuring the public. This covenant not to compete fails to greatly limit the defendant to pursue her profession. Because this Court finds that the covenant is reasonable on its face, the second issue is whether the plaintiff's interests require protection. Based on the evidence presented by the parties, it is clear that the plaintiff's market share may be threatened by the employee's entry into the defendant's market. The defendant testified that within the short period between November 7, 2013 and November 18, 2013, she saw 21 different

27

patients at her business, 20 of these patients being prior patients of the plaintiff. Because of this, the plaintiff's interest clearly needed protection at that time. Therefore, this Court finds that the contract was valid and that the covenant not to compete was enforceable. Therefore, the defendant's motion for summary judgment is denied.

B.    Plaintiff's Motion for Partial Summary Judgment

As discussed earlier, the plaintiff filed a motion for partial summary judgment, seeking judgment for (1) its claim of breach of contract against the defendant, and (2) for the defendant's counterclaims of economic duress and IIED. ECF No. 80. The plaintiff first argues that adequate consideration existed to make the contract valid and enforceable. Specifically, the plaintiff states the defendant knew about the covenant not to compete for more than four months before starting her employment. In addition, her initial employment, salary, benefits, and bonuses all constituted sufficient consideration for the covenant not to compete. Further, because the clause is valid, the plaintiff asserts that the clause is enforceable due to its reasonable scope. Accordingly, the plaintiff requests this Court to find that the defendant breached the covenant not to compete. Next, the plaintiff argues that it is entitled to summary judgment regarding the defendant's counterclaims of economic duress and IIED. First, the plaintiff asserts that the covenant not to compete is not only

valid and reasonable, but also is the product of the parties'
freedom to contract.  Second, the plaintiff claims that having the
defendant sign the covenant not to compete fails to show any form
of extreme or outrageous conduct.  For those reasons, the plaintiff
seeks summary judgment in its favor.  As set forth below, the
plaintiff's motion for partial summary judgment is granted.

1.  <u>Breach of Contract Claim</u>

As provided earlier, this Court determined that the contract
is valid and that the covenant not to compete is enforceable.
Accordingly, this Court agrees with the plaintiff that the
defendant breached the covenant not to compete.  Specifically, the
defendant opened her own practice within three miles of the
plaintiff's office.  This is irrefutably proven by the documents
establishing her limited liability company, which included her
articles of organization, loan documentation, and lease agreement.
ECF No. 38 Exs. 5, 6, and 7.  Further, the defendant established
her own practice after she ended her employment with the plaintiff
within the one year limitation period.  Most importantly, the
defendant then began to work with 20 of the plaintiff's clients.
In addition to the geographical and time limitations, the covenant
not to compete clearly provides that the defendant was prohibited
from "contact[ing] the customers, clients and prospective customers
and clients of [the plaintiff]."  ECF No. 38 Ex. 3.  This clearly
violates the covenant not to compete, which again this Court

29

determines is enforceable.  Therefore, the defendant breached the contract at issue.  Because this Court finds that the defendant breached the contract, the only issue regarding this claim to be resolved at trial will be determining damages.

2. <u>Defendant's Counterclaims of Economic Duress and IIED</u>

As provided above, the plaintiff argues that it is entitled to summary judgment regarding the defendant's counterclaims of economic duress and IIED.  These remaining counterclaims are presented below.

a. <u>Economic Duress</u>

Under West Virginia law, economic duress is defined as the following: "Where the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss." <u>Mach. Hauling, Inc. v. Steel of West Virginia</u>, 384 S.E.2d 139, 142 (W. Va. 1989) (holding that customer's threat to stop doing business with shipper if shipper did not pay for goods that buyer rejected was not actionable business or economic duress).  Further, in determining if duress is present, the "test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed—the fear of which made it impossible for him to exercise his own free will."

30

Id. at 143-44 (internal citations omitted). Even more pointedly, "(1) the party who asserts business compulsion 'must show that he has been the victim of a wrongful or unlawful act or threat,' and (2) 'such act or threat must be one which deprives the victim of his unfettered will.'" Swiger v. Jones, No. 12-1109, 2013 WL 2157693, at *3 (W. Va. May 17, 2013). However, duress does not exist when "one party to the contract has driven a hard bargain," or if the "market or other conditions now make the contract more difficult to perform by one of the parties or that financial circumstances may have caused one party to make concessions." Id. at 145.

The plaintiff claims that the defendant asserts that economic duress occurred when the plaintiff conditioned the defendant's employment upon the execution of the covenant not to compete. In response, the defendant claims that she was given an ultimatum and even threatened with termination of employment if she failed to agree to the covenant not to compete. In support of this, the defendant cites the deposition transcript of Whitman. The defendant cites to the following exchange:

> Q: So what if an employee for your company hadn't signed these documents? What would their situation be?
>
> A [Mr. Whitman]: Well, if they refused to sign them, then we would have to terminate them. Well, we couldn't hire them. Sorry.

The defendant relies upon only the first sentence of Mr. Whitman's answer, and claims this demonstrates the threat or

ultimatum faced by the defendant.  However, as provided above, Mr. Whitman actually first misstated his response and then corrected himself.  The defendant requests this Court to frame the analysis of economic duress as the whether she "had a 'hard choice' to make, i.e., keep her job and sign the Covenant, or not sign and get fired."  ECF No. 85.

That is not the analysis required under the law governing economic duress.  As provided above, the defendant must demonstrate that she was a victim of a " wrongful or unlawful act or threat" and that the "act or threat" was one that deprived her of her unfettered will.  <u>Swiger</u>, No. 12-1109, 2013 WL 2157693, at *3.  The facts do not indicate any such wrongful or unlawful threat by the plaintiff.  The "threat" of termination of employment that the defendant attempts to proffer is misstated when one fully reads the deposition and analyzes the record presented.  Further, no facts exist that demonstrate that the defendant agreed to the employment contract and the covenant not to compete due to some deprivation of her unfettered will.  The defendant has failed to satisfy her burden.  Accordingly, the plaintiff's motion for partial summary judgment regarding the defendant's counterclaim of economic duress must be granted.

b.  <u>Intentional Infliction of Emotional Distress</u>

In support of its motion for partial summary judgment regarding the defendant's counterclaim for IIED, the plaintiff

argues that the defendant offers no evidence to support the required elements of an IIED claim. Further, the plaintiff asserts that having an employee sign a covenant not to compete fails to amount to "outrageous" or "extreme" behavior on the part of the employer.

In order to prevail on a claim for IIED, sometimes referred to as the "tort of outrage," the West Virginia Supreme Court has held that a claimant must prove:

> (1) that the [counterclaim] defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the [counterclaim] defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from [its] conduct; (3) that the actions of the [counterclaim] defendant caused the [counterclaim] plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the [counterclaim] plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419 (W. Va. 1998). In her response, the defendant only claims that by providing the alleged ultimatum to sign the covenant not to compete, the plaintiff did so with the intent to intimidate, coerce, or force the defendant to execute the agreement. Further, the defendant seems to argue that the plaintiff's offer was a "take it or leave it" styled-offer, and that allegedly proposing the offer in such a manner amounts to IIED. Finally, the defendant appears to indicate that the covenant not to compete implies that if a violation of it occurred, then the plaintiff would not pursue damages. Because the

33

plaintiff decided to enforce the clause and seek damages against the defendant, this is further adding to her emotional distress.

The reason IIED is sometimes referred to as the tort of outrage is that it requires outrageous conduct on the part of the tortfeasor. As provided in <u>Travis</u>, it arises in a case "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Travis</u>, 504 S.E.2d at 426. The tortfeasor's conduct must be more than "unreasonable, unkind or unfair." <u>Grandchamp v. United Air Lines, Inc.</u>, 854 F.2d 381, 383 (10th Cir. 1988). In the facts of this case, the defendant proffers no conduct that even remotely arises to such an outrageous level. The fact that the covenant not to compete was a condition of the defendant's employment fails to satisfy the requirements of IIED. Further, the defendant is mistaken regarding the text of the covenant not to compete. Upon this Court's reading of the covenant, no such limitation of the plaintiff's ability to seek damages exist. The only provision that discusses damages is the following: "It is impossible to measure the monetary damages" to the plaintiff "by reason of breach of any provisions contained [within the covenant not to compete], and in that event of a breach by Employee, [the plaintiff] shall be entitled to equitable relief, including the right to enjoin any party in violation of this agreement." ECF 38 Ex. 3. That language does not limit the method

34

of recovery by the plaintiff when a breach occurs. Rather, it simply provides no predetermined amount of damages that the defendant must pay when any breach, large or small, occurs. Thus, the plaintiff is not pursuing "unlawful" means as this Court interprets the defendant is implying. The defendant has failed to satisfy her burden and thus, the plaintiff's motion for partial summary judgment regarding the defendant's IIED counterclaim must be granted.

C. Defendant's Supplemental Motion for Summary Judgement

As mentioned earlier, the defendant also filed a supplemental motion for summary judgment. ECF No. 76. In her supplemental motion for summary judgment, the defendant argues that she is entitled to summary judgment regarding the plaintiff's breach of contract claim. Specifically, the defendant asserts that the plaintiff's corporate policies in its employee handbook render the contract at issue unenforceable. The defendant points to language in the handbook that it claims requires the CEO, COO, or CFO of the plaintiff to sign all agreements pertaining to an employee's employment contract. Further, the defendant also claims that the plaintiff's acknowledgment form provides a similar requirement. According to the defendant, the contract was signed by none of these allegedly necessary parties. Therefore, the contract is invalid and the covenant not to compete is unenforceable. Thus, because of a lack of mutual assent, the defendant argues that this

Court should grant her supplemental motion for summary judgment. The three arguments, regarding the handbook, the acknowledgment form, and a lack of mutual assent, are separated and discussed below. For the reasons set forth, the defendant's supplemental motion for summary judgment is denied.

1. <u>The Employee Handbook</u>

Notwithstanding this Court's determination that the contract is valid and the covenant not to compete is enforceable, this Court will still address the defendant's additional arguments to the contrary.

The defendant points to the following language in the plaintiff's employee handbook:

> No employee of [the plaintiff] other than the President, CEO, COO or CFO[5] is authorized to make any representations, promises or agreements concerning an employee's (i) terms of employment; (ii) compensation; or (iii) benefits which will differ from the terms of this Handbook. Any such representation, promise or agreement shall only be enforceable if it is in writing and signed by the President, CEO, COO or CFO.

ECF No. 76-4. In light of this language, the defendant argues that only the executives listed above could bind the company on matters of employment or represent its terms. Thus, because only the defendant executed the contract, and because none of the listed

---

[5]It should be noted that "CEO" means Chief Executive Officer, "COO" means Chief Operations Officer, and "CFO" means Chief Financial Officer.

high-level executives signed the contract, the contract is invalid and thus the covenant not to compete must be unenforceable.

The plaintiff first responds that the handbook is inadmissible. Second, the plaintiff asserts that the defendant failed to cite to the language preceding the statement that she relies on. Specifically, the handbook also provides the following in a paragraph that precedes the portion the defendant relies on:

> The contents of this handbook are presented as a matter of information only and this handbook does not create a contract. None of the benefits or policies contained in this handbook are intended by reason of their publication to confer any rights or privileges upon you, or entitle you to be, or remain, employed by [the plaintiff].

Id. Therefore, under the same language provided in the handbook, the plaintiff claims that the handbook carries no weight regarding the validity and enforceability of the contract at issue. In the alternative, the plaintiff also argues that the handbook language relied on by the defendant only applies when the terms of employment differ from the terms in the handbook. In particular, the handbook provides that "terms of employment . . . which will differ from the terms of" the handbook require the signature of a named top executive. However, the plaintiff claims that the defendant has failed to demonstrate how the covenant not to compete differs from the terms of the handbook. Because no difference exists, no signature by a named top executive would be necessary. For those reasons, the plaintiff argues that the defendant's motion should be denied.

Under West Virginia law, employee handbooks have been found to form the basis for a unilateral contract "if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons." Syl. Pt. 6, <u>Cook v. Heck's, Inc.</u>, 342 S.E.2d 453 (W. Va. 1986). However, "[a]n employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself." Syl. Pt. 5, <u>Suter v. Harsco Corp.</u>, 403 S.E.2d 751 (W. Va. 1991).

This Court agrees with the plaintiff's latter arguments. Regarding the admissibility of the handbook, this Court notes that the handbook is admissible pursuant to Federal Rules of Evidence 801 and 803. Concerning the text of the handbook, it is clear that the text the defendant relies on does not make the covenant not to compete unenforceable. The handbook explicitly provides that it does not "confer any rights or privileges upon you," and that the contents of it are "presented as a matter of information only and . . . does not create a contract." The handbook does not appear to actually require the named top executives of the company to negotiate every contract and sign every contract for every single employee in the company. Further, the phrase in the handbook that requires "benefits which will differ from the terms of this Handbook" to be signed by a top executive in order to be enforceable also fails to attack the validity of the employment

contract. Based on the portion of the handbook that the parties cite to and have provided this Court to analyze, the defendant presents no evidence that the covenant not to compete and employment contract differ from the contracts provided to the plaintiff's other employees. In the email dated June 22, 2012, the covenant not to compete was referred to as "standard." In addition, Whitman stated in his testimony at the hearing on the preliminary injunction that the covenant not to compete and the employment contract at issue were both used in the regular and "normal course of business." ECF No. 38-9 *11-14.

Aside from the terms of employment for other employees, the defendant also fails to demonstrate how the covenant not to compete at issue differs from the terms of the handbook. Even if the terms of the handbook were binding, the covenant not to compete does not differ from the portion of the handbook provided to this Court by the parties. The defendant provided no indication of such a difference. Because the handbook policy allegedly contains no covenant not to compete, the defendant claims a difference exists between her terms of employment and the handbook. Thus, the signature of a top executive would be necessary. However, the defendant's argument is without merit. The handbook requires the signature of a top named executive when a difference between an employee's terms of employment and the handbook exist. If the handbook contained a covenant not to compete, and then the

plaintiff required the defendant to sign a covenant not to compete with different terms or limitations, that would be a difference under the handbook. Or, the same could be said if the handbook prohibited the use of covenants not to compete and then the plaintiff required the defendant to execute such a covenant. In this case, that does not exist. The handbook neither contains the terms of a covenant not to compete nor prohibits the use of such covenants. The covenant not to compete that the defendant executed does not differ with any terms of the handbook. Further, the handbook also contains an underlined clause that states that "[m]anagement, at all times, reserves the right to act apart from the procedures set out in this Handbook." Thus, even if the terms of the handbook were binding, the signature of a top executive would be unnecessary.

Further, pursuant to West Virginia law provided above, the handbook contains a large and obvious disclaimer, quoted above. The disclaimer is in bold letters. The portion of the disclaimer that disclaims the handbook from creating any contract is in all capital letters. The disclaimer in this civil action is very similar to that described in <u>Suter v. Harsco Corp</u>. The handbook is clearly nonbinding based on its own text and provisions, and its disclaimer satisfies the requirements under West Virginia law.

2. The Acknowledgment Form

The defendant also claims that the plaintiff's acknowledgment form provides that only certain named high ranking corporate officials have authority to enter into any employment agreements. According to the defendant, the contract was signed by none of these allegedly necessary parties. Therefore, the covenant is unenforceable.

As described above, although a unilateral contract can form by promises made in an employee handbook, West Virginia law provides that "[a]n employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself." Suter, 403 S.E.2d at Syl. Pt. 5.

The acknowledgment formed, which is signed by the defendant, pertains to the contents of the employee handbook. It provides a nearly identical disclaimer at the top of the form. However, it does provide a provision that reads: "No [representative of the plaintiff], other than the President, CEO, CFO or COO, has any authority to enter into any agreement for employment for a specified period of time, or to make any agreement to the contrary." Again, this form provides a disclaimer that provides "no employment rights are conferred upon employees by this handbook," and that the statements and policies of the handbook "do not constitute a promise that they will be applied in their

41

entirety in all cases." The disclaimer essentially provides that the handbook policies are just that, policies, and do not confer contractual rights to the employee. Pursuant to West Virginia law, the plaintiff again provides the disclaimer that prevents it from being bound by the terms contained within the handbook, which includes the acknowledgment form. Like the handbook discussed earlier, the acknowledgment form contains nonbinding provisions.

     3.  <u>Lack of Mutual Assent</u>

Finally, the defendant argues that because the covenant not to compete at issue fails to have the signatures of the executives listed in the handbook and acknowledgment form, a lack of mutual assent exists. Therefore, the defendant claims that the contract should be found invalid and thus the covenant not to compete would be unenforceable.

Notwithstanding that this Court has determined that the language of the handbook and acknowledgment form fail to affect the validity of the contract, West Virginia law clearly requires mutual assent to form a valid contract. <u>Ways v. Imation Enterprises Corp.</u>, 589 S.E.2d 36, 44 (W. Va. 2003); <u>Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.</u>, 216 S.E.2d 234 (W. Va. 1975). As further provided,

> In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence

42

of an actual agreement or by indirect evidence through
facts from which an agreement may be implied.

Ways, 589 S.E.2d at 44 (internal citations omitted). More
importantly, mutual assent does not require all parties to sign the
agreement. Rather, "one party may waive such execution by all
other parties by accepting performance or by otherwise indicating
that the signature of all parties is not a prerequisite to a valid
contract." Kemboi v. Ocwen Loan Servicing, LLC, 3:11CV37, 2012 WL
2571287, at *7 (N.D. W. Va. July 2, 2012). Further, the
requirements provided under the statute of frauds are satisfied
with only the signature of the party to be charged. Hamrick v.
Nutter, 116 S.E. 75 (W. Va. 1923).

Under the facts of this case, mutual assent clearly exists.
This Court has already confirmed that the offer and acceptance have
been satisfied. However, the defendant argues that the handbook
and acknowledgment form provisions require a signature by the
executives and the defendant in order to be valid and satisfy
mutual assent. Although this Court already determined that those
requirements do not apply to the contract and covenant not to
compete at issue, even if they did, the party to be charged, the
defendant, signed the contract. The defendant "waived such
requirements," as provided under Ways v. Imation Enterprises Corp.,
by accepting the employment with the plaintiff, which she engaged
in for over a year after acceptance. Further, she signed the
employment contract and the covenant not to compete, as well as the

acknowledgment form, indicating that she is clearly the party to be charged.  Accordingly, mutual assent existed.  Thus, this Court again finds the contract valid and the covenant not to compete enforceable.

## V.  Conclusion

For the reasons provided above, the defendant's combined motion to correct and motion for summary judgment (ECF No. 73) is DENIED.  The plaintiff's motion for partial summary judgment (ECF No. 80) is GRANTED.  The defendant's supplemental motion for summary judgment (ECF No. 76) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on the defendant's counterclaims of economic duress and intentional infliction of emotional distress.  Because this Court has granted the plaintiff's motion for partial summary judgment, the issue of damages remains to be resolved at trial.

DATED:    December 2, 2014


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE